J. O. BOONE, Trustee, v. R. W. HARDIE, Sheriff,

*Deed—Fraud—Evidence.*

1. The maker of a deed cannot be allowed to prove that he had made an agreement with the trustee inconsistent with the one expressed in the deed.
2. A deed of trust conveying a stock of goods to secure certain debts, and providing that after the expiration of twelve months and in case of default, the trustee shall take possession and sell the same, after allotting to the trustor his personal property exemption, is fraudulent in law.
3. And proof that the trustor remained in possession and managed the business, as agent of the trustee, and received and expended the profits on his own responsibility, furnishes conclusive evidence of fraud.

(*Cheatham* v. *Hawkins,* 80 N. C., 161, cited and approved.)

CIVIL ACTION tried at Fall Term, 1882, of CUMBERLAND Superior Court, before *Gilmer, J.*

The plaintiff appealed.

*Messrs. Sutton, Guthrie* and *Hinsdale & Devereux,* for plaintiff.

*Messrs. Ray, Huske* and *Rose,* for defendant.

RUFFIN, J. On the 18th day of February, 1879, the plaintiff, Bell, being insolvent, executed a deed wherein he conveyed his stock of goods, liquors, groceries and notions, together with his evidences of debt and his household and kitchen furniture to his co-plaintiff, Boone, in trust to secure certain debts then owing by him, with a proviso however, that if he should pay the same on or before the 18th day of February, 1880, then the conveyance should be void, but if not, then and in that event the said Boone should " *take possession of the said property, and after allotting to the said Bell his personal property exemption thereout according to law, sell the same,*" and apply the proceeds as directed.

The deed was registered on the first of the following month, and soon thereafter certain creditors of Bell, unsecured in the deed in trust, obtained judgments against him, and placed executions in the hands of the defendant, who as sheriff of the county, levied upon the property embraced in the deed, and afterwards sold it and applied the proceeds to the satisfaction of the judgment creditors.

Thereupon the plaintiffs bring this action to recover damages for the conversion of the property. The defendant justifies under the said executions, and impeaches the deed in trust as having been made with intent to hinder and delay the creditors of the maker, Bell.

At the trial, the following issue was submitted and responded to by the jury in the affirmative: " Was the deed in trust referred to in the complaint fraudulent as to creditors?"

1st Exception—The plaintiff, Bell, was introduced as a witness, and after testifying to the execution of the deed and the genuineness of the debts secured therein, the plaintiffs proposed to prove by him that at the time of the execution of the deed, it was agreed between the parties that the trustee should take immediate possession and control of the property conveyed. This was objected to, and the court

sustained the objection—holding that the witness might speak of what was done by the parties, but not of their agreements outside of the deed.

The deed upon its face admits of but one construction. Until default made, by a failure on the part of Bell to pay the debts secured, within the twelve months next after the execution of the deed, the trustee had no power conferred upon him to take possession and dispose of the goods. At the end of that time, and not until then, in case of such de-fault, was he authorized to take dominion over them; and in the meantime they were to remain in the custody and under the control of the debtor.

Apart from the plain wording of the instrument, the fact that he reserves his exemptions as allowed by law, and makes their allotment the first act to be done by the trustee, and yet postpones it until after the lapse of the twelve months, precludes the possibility of giving to it any other construction. And such being the interpretation put upon it by the court, it must follow necessarily that the maker could not be heard to say that he had a different understanding with the trustee, inconsistent with the one expressed in the deed.

2. The plaintiffs then proposed to ask the witness, Bell what his intentions were in executing the deed, but upon objection was not allowed to do so. To settle this point, it is only necessary to refer to the decision made when this cause was before this court on a former appeal. 83 N. C., 470. It was then declared by the court, that though the deed was not upon its face so clearly fraudulent as to justify the court in pronouncing its condemnation, as a matter of law, it was still presumptively fraudulent, and needed that presumption to be rebutted, and that in determining that question, the intent of the maker as a bare mental operation and apart from his consent, was altogether immaterial; and this, upon the ground that a party cannot be permitted to say

that he did not intend the necessary and natural consequences of his own act. See also *Cheatham* v. *Hawkins,* 80 N. C., 171.

3. The presiding judge, construing the deed to provide that the property should remain in the possession and control of the debtor for twelve months after its execution, without his having to account to any one therefor, held, as this court did, that there was a presumption of fraud against it, and holding also that there was no evidence offered which tended to rebut that presumption by explaining the delay, so instructed the jury, and caused them to find the issue for the defendant. So that, the only question now is— Was there any such evidence?

The only witnesses who testified, as to that point, were the two plaintiffs, and in substance their testimony was, that though the deed was executed and proved before the clerk on the 18th of February, it was not registered until the 1st of March. On the day of its execution, Boone, as trustee, assumed the control of the property, but left it in Bell's possession to hold and manage, as his agent, but without a word of agreement as to his compensation. Bell kept no account of sales or expenses, though he did of the cash, and sold mostly for cash. After the execution of the deed, Boone visited the store some two or three times a week, and had a general knowledge of what was going on, though Bell did not advise with him as to his sales, and one debt to the bank he paid off in full, of his own accord and without the knowledge of Boone. Though no new goods were contracted for after the deed was executed and before it was registered, some came to the store, and were received and kept until they were seized by the defendant, and after the deed was registered Bell made other purchases. No allotment of Bell's personal property exemption was made, until after the seizure by the defendant, and then it was made by the officer.

The effect of this testimony may be to show, that perhaps the parties misconstrued the deed as to the power and authority of the trustee, but it furnishes literally no explanation of the motive which prompted the debtor to postpone his creditors for twelve months, during which time he expected to retain possession of the property, and to receive and expend the profits upon his own responsibility—as indeed he did, according to his own statement, until its seizure by the officer. So far from rebutting the legal effect of the deed, and explaining its tendency to delay and hinder creditors, it serves to make that a conclusion, which before was but a presumption of fraud.

No error.                                          Affirmed.