O. LEE ICENHOUR, JAY STAFFORD, BURETTE STAFFORD, ROM C. DEAL, RALPH STAFFORD, AND WAITSELL ICENHOUR, ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS WHO HAVE OR CLAIM AN INTEREST OR RIGHT BY WAY OF EASEMENT OR OTHERWISE TO PROPERTY OR RIGHTS REFERRED TO IN THE COMPLAINT IN THIS ACTION, v. MARSHALL BOWMAN, PERRY WHITE, JAYSON FOX, WILLARD PRICE, ELBERT BOWMAN, SWAN BLANKENSHIP, DEXTER DEAL, MARVELEE DAGENHART, MARLOW ICENHOUR, GARLAND HEFNER, TERRILL BOSTIAN, AND EUGENE CLINE, TRUSTEES OF FRIENDSHIP LUTHERAN CHURCH, AND THEIR SUCCESSORS IN OFFICE.

(Filed 11 April, 1951.)

**1. Constitutional Law § 22—**

Where the parties to a civil action do not waive trial by jury, nor consent that the judge find the facts, it is error for the judge to enter judgment without the aid of a jury on controverted issues of fact raised by the pleadings. Constitution of N. C., Art. I, Sec. 19; Constitution of N. C., Art. IV, Sec. 13; G.S. 1-172; G.S. 1-184.

**2. Same: Trial § 20—**

In an action by heirs to recover land on the ground of breach of condition of a conditional fee, defendants' answer asserting an unqualified fee simple, denying breach of condition, and setting up the defenses of waiver, estoppel and statutes of limitation, raises issues of fact for the determination of the jury, and it is error for the court in the absence of waiver of jury trial or consent that the court find the facts, to render judgment without the intervention of a jury.

APPEAL by defendants from *Godwin, Special Judge,* at January Term, 1951, of ALEXANDER.

Civil action to have certain land described in complaint declared a public burial ground, and, in the event of failing in this, to adjudge plaintiffs the owners of so much of it as had not been heretofore used to bury the dead, etc.

Plaintiffs, on behalf of themselves as heirs at law of Nimrod Lunsford and all other persons who are interested with them, allege and say in their complaint substantially the following: That on or about 16 August, 1832, Nimrod Lunsford executed and delivered to Daniel Bowman, Daniel Fry, George Deal and Nimrod Lunsford, Commissioners and their successors, a deed for three and one-half acres of land in Burke County, North Carolina, lying on waters of Lower Little River on the south side of a small branch, specifically described, "for the only use of a Meeting and School house as long as the above named commissioners and their successors will keep them for that purpose"; that the commissioners named took charge of the property and for a number of years conducted a school and meeting house on the premises and used a portion of same

as a burial ground for the general public, and while the school and meet-
ing house were not kept up and maintained as a school and meeting house,
the land has been maintained as public burial ground, without inter-
ference; that approximately one and a half acres has been so taken, and
it has been understood that in case so desired the remainder of the prop-
erty should be kept and used for general burial ground without regard to
denomination or church affiliation, but for the general public under
proper management; that the defendants have violated such understand-
ing and are seeking to use it for other purposes, and in fact are now doing
so,—they having erected a barn on, and fenced a portion of that which
has not been used for the burial of the dead,—their purpose being to
acquire title thereto, etc.; that, as the plaintiffs are advised, when the
property ceased to be used for the purposes mentioned in the deed it
reverted to Nimrod Lunsford, and, he being dead, the portion not actually
used as a burial ground reverted to his heirs at law; that the heirs at
law are agreeable to the continued use of the property as a public burial
ground; but that, if satisfactory adjustment to that end cannot be had,
they, as such heirs at law, are the owners of the land in fee, and are
entitled to the immediate possession of same.

Defendants, answering, admit that Nimrod Lunsford executed and
delivered to Daniel Bowman, et al., Commissioners, a deed for three and
a half acres of land in Burke County, now in Alexander County, as de-
scribed in said deed; that the commissioners took charge of the lands;
that a school and meeting house were erected thereon; that a portion of
the land was used as a burial ground or cemetery for the benefit of the
people of that community,—the privilege of burying their dead there not
being denied to any one by said commissioners and their successors of the
Friendship Lutheran Church, including the defendants; that the Friend-
ship Lutheran congregation and the successor commissioners and trustees
moved the school and meeting house, and erected and have maintained
through the years what is known as the Friendship Lutheran Church;
and that they and their predecessors in office have erected a barn at the
northwest corner of said 3.5 acre tract and used a portion of said land
not used for cemetery purposes as a pasture. But defendants deny all
other material allegations of the complaint, and aver that in addition to
the land described in the complaint the Friendship Lutheran congregation
and the successor commissioners and trustees have purchased and set
aside additional grounds for said church and burial purposes, across the
public road, and have been and are now using all said property as one
church plant; that two public roads go through the church property, and
the property described in the complaint lies on the east of one of these
roads; that approximately two acres of the 3.5-acre tract have been taken

and are now used as a burial ground, and approximately 1.5 acres "remain for such use during the coming years."

And for a further defense, defendants aver in pertinent part:

1. That the deed from Nimrod Lunsford to the commissioners "conveyed an indefeasible fee simple title to said land to said commissioners, as defendants are advised and believe . . ."

2. That two of the commissioners named in the deed, namely Daniel Fry and George Deal, in 1833, were communing members and Elders, and a third one, Daniel Bowman, in 1836, was a communing member of the Lutheran congregation of Frienship Meeting House, and each so remained until his death; and was buried on said land.

3. That as they are advised and believe, the Lutheran congregation of Friendship Church, by and with the consent of the commissioners named in said deed, erected a school and meeting house upon the land described in the complaint in the year 1833, and used the same as a meeting and school house continuously for approximately 25 years or until the year 1858, and also used a portion of said land as a burying ground; and that during said period Nimrod Lunsford, the grantor in the deed, withdrew and was succeeded as commissioner, and waived any and all rights that he may have had in and to said property, and delivered same over to his successor or successors in the Lutheran congregation of Friendship Meeting House.

4. That Nimrod Lunsford died about the year 1846.

5. That as defendants are advised and believe, in about the year 1858, the portion of the said land fronting along the public road having been used for burying grounds, and no suitable portion of same remained near the highway for the erection of a new meeting house or church, the then successor commissioners, who were officers and trustees of the Friendship Lutheran congregation, deemed it advisable to purchase additional lands across the pubic road on which to erect a new school and meeting house, and said new house was erected to take the place of the old log school and meeting house; "that thereafter and continuously through the years the officers and trustees of Friendship Lutheran congregation were the sole successor commissioners and trustees to, the owners of, and in full charge and possession of said land . . . and have conscientiously endeavored to carry out the wishes and intent of the original grantor in the uses of the land," etc.

6. That the officers and trustees, including the pastor of said Friendship Lutheran congregation of Alexander County, as successors to the original commissioners, by virtue and under said deed, are now the owners in fee simple absolute of the lands therein described, "or that the said Friendship Lutheran congregation and the officers and trustees thereof have been in open, notorious and continuous adverse possession under a claim

of fee simple title since the year 1858, and are the owners thereof by adverse possession under the laws of North Carolina, and as such owners, for a long period of years, have properly kept up and maintained said land, and in the exercise of Christian virtues and principles, have voluntarily given the privilege to, not only Lutherans, but to all citizens of that community, with or without religion, to bury their dead upon said premises . . . and it is the intention and purpose of said defendants and owners to continue this Christian practice."

7. That, for causes and in manner stated, defendants plead waiver and estoppel, and also statutes of limitations as a bar to plaintiffs' right to recover herein.

Plaintiffs, replying, deny in material aspects the said averments of defendants' further answer and defense.

When the cause came on for hearing, and a jury having been selected and impaneled, and the pleadings read, and considered, the court announced that in his opinion the intervention of a jury was not necessary. Defendants objected. Objection overruled. Defendants excepted. Exception No. 1.

Thereupon the court proceeded to find facts, and on facts found adjudged and declared that the property described in the complaint and deed referred to, and all parts thereof, to be a public burial ground, etc., and ordered that the fencing, barn, etc., placed upon the unused portion of the premises be removed, etc., and that plaintiffs recover costs to be taxed.

Defendants excepted, and appeal to Supreme Court and assign error.

*A. C. Payne and Burke & Burke for plaintiffs, appellees.*

*Jesse C. Sigmon, Jesse C. Sigmon, Jr., and John C. Stroupe for defendants, appellants.*

WINBORNE, J. In North Carolina the Constitution guarantees, the statutes of the General Assembly preserve, and the decisions of the courts enforce, the right to trial by jury. Constitution of N. C., Art. I, Section 19, Art. IV, Section 13, G.S. 1-172, G.S. 1-184. *Andrews v. Pritchett,* 66 N.C. 387; *Chasteen v. Martin,* 81 N.C. 51; *Driller Co. v. Worth,* 117 N.C. 515, 23 S.E. 427; *Hershey Corp. v. R. R.,* 207 N.C. 122, 176 S.E. 265; *McCullers v. Jones,* 214 N.C. 464, 199 S.E. 603.

The Constitution, Article I, Section 19, proclaims that "in all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." The Constitution, Article IV, Section 13, also declares that "in all issues of fact, joined in any court, the parties may waive the right to have the same determined by a jury . . ." And in implementation of these Constitutional provisions, the General Assembly

of North Carolina has enacted these statutes: G.S. 1-172, which provides that "an issue of fact must be tried by a jury, unless a trial by jury is waived or a reference ordered," and G.S. 1-184, which provides that "trial by jury may be waived by the several parties to an issue of fact . . ."

Thus where the parties to a civil action do not waive trial by jury nor consent that the judge find the facts, it is error for the judge to enter judgment without the aid of the jury on the controverted issues of fact raised by the pleadings. *McCullers v. Jones, supra.*

Hence the assignment of error predicated on exception of defendant to the action of the trial judge in dispensing with a jury trial, now presented, in absence of waiver and consent of parties, is well founded. The averments in the answer of defendants, particularly in the further answer and defense, raise issues of fact as to which defendants may not be deprived of the right to a jury trial,—without their consent. Here, as in *McCullers v. Jones, supra,* there is no waiver of jury trial, and no consent that the judge find the facts. Hence there is error in the judgment from which appeal is taken. Therefore the judgment is stricken out, and the cause is remanded for the proper determination of the issues arising upon the pleadings.

Error and remanded.